Torry et al. *v.* Robertson.

---

---

GEORGE G. TORRY et al. *vs.* WILLIAM ROBERTSON, Trustee, &c.

When the statute says that an executor or administrator shall have power to defend or prosecute an action commenced by or against the deceased to final judgment, it embraces those cases only where the law allows an executor or administrator to qualify as such for that purpose.

This statute applies to natural persons, not to artificial persons.

At common law, an original suit abated by the death of the natural person, and the power to sue and collect debts of the deceased *is only* given by statute to executors and administrators.

To remedy the evil arising from a defect in the law, the special statute was passed, authorizing revivals of suits in certain cases.

*Nevitt* v. *Bank of Port Gibson*, 6 S. & M. 521; *Com. Bank of Natchez* v. *Cham-*

*bers,* 8 Ib. 44; *Chew* v. *Peale,* 12 Ib. 700, cited, explained, and confirmed; and
declared not applicable to this case.
Under the law, an administrator *de bonis non* could sue for and collect debts of
the deceased; yet a suit commenced against an original administrator who
had died, could not be revived against the administrator *de bonis non* who
succeeded him. *Portevant* v. *Pendleton,* 1 Cushman, 25, cited and confirmed.
*Held,* that the trustee in this case could not revive the suit pending in the
name of the corporation at the time of the forfeiture of its charter.

In error from the circuit court of Claiborne county; Hon.
Stanhope Posey, judge.

The facts of this case are contained in the opinion of the
court, and points made by counsel, where all the important
facts of the case will be found.

The following assignment of errors was made.

1. That the circuit court erred in reviving this suit in the
name of William Robertson, trustee, against all the original
parties; and again, in reviving it a second time on *scire facias,*
in the name of the bank; against John L. and Philip H.
Torry, as administrators of Alexander Torry, deceased; said
Robertson not being a party to said *scire facias,* which was to
revive in the name of the original parties.

2. Said circuit court erred in proceeding to trial and judg-
ment in the cause without disposing of the motion of the
defendants, John L. and Philip H. Torry, administrators, &c.. to
quash *scire facias* issued against them, and to set aside the
order of revival of the suit, in the name of William Robertson,
trustee.

3. That said circuit court erred in awarding execution against
the rights and credits of Alexander Torry, deceased, in the
hands of his administrators; which, being choses in action, are
not subject to levy and sale by execution.

4. The verdict of the jury and judgment of the court are
erroneous, in finding a much larger verdict against Chambliss,
an accommodation indorser, than against the maker of said note.

5. That the court erred in rendering separate and independent
judgments in favor of plaintiffs against defendant, amounting
to $10,542.14, when it is apparent from the record that plaintiffs
could only recover $8,591.35 against all the parties without

17*

defence, and only sued for that sum, to wit, an independent judgment against the makers of said note for $1,950.79, and an independent judgment against the indorser Chambliss for $8,591.35.

6. That the proceedings and judgments in the court below are erroneous, and against law. Wherefore, for the errors aforesaid, and other manifest errors apparent of record, the plaintiffs in error pray that the judgment of Claiborne court aforesaid may be reversed, annulled, set aside, and held for nought.

*George S. Yerger*, for plaintiffs in error.

Can a trustee of a dissolved corporation revive at law a suit pending in the name of the bank?

At common law, all personal actions, whether by contract or not, abated. But the executor, in whom his right vested by law, could commence new suit. So dissolution of a corporation abated suit. 7 Leigh, 156; 1 Robert. R. 525; 3 S. & M. 791; *Portevant* v. *Pendleton*, 1 Cushman, 25.

1. The act of 1843 gives a right to the trustee to sue at law; it is a special statute. There is no power to revive a suit given, unless the power to sue includes it; and this is disproved by the law, for the executor had a right to sue; the assignee of a bankrupt had a right to sue; but unless a power to revive is given, they have nought.

2. Does the act (Hutch. Code, 841) authorizing executors or administrators to revive suit, embrace this case? This depends on the question whether this statute applies to natural persons alone.

It is settled, the words person, occupier, individual, unless restrained, embraces both natural and artificial persons.

But where the statute plainly and from its language only applies to natural persons, it must be confined to them. That it does only so apply, is manifest, for it gives the right only to heirs, executors, &c.; and these terms, technically as well as in every day language, only apply to natural persons. This was the clear meaning of the statute.

3. Has the question ever been settled by this court? I maintain it has not. *Bank of Port Gibson* v. *Nevitt*, was in

Torry et al. *v.* Robertson.

chancery court. There was a decree appealed from, and the question arose whether it could be revived in this court. The court decided it on the rules of the chancery court.

4. *Commercial Bank* v. *Chambers*, was a motion, after judgment, to have execution of judgments, or to revive judgments. This, at common law, could be done after judgment, because any one on whom the legal right devolved, as an executor, &c. was in privity, and could sue out execution, or could have execution sued out against. He could maintain debt on the judgment, or have execution by *scire facias*. 3 Bacon, Ab. Execu. F.; Ib. G. 2. He might prosecute at common law a writ of error, because the law transmitting the legal estate created a priority which authorized it. 3 Bacon, Ab. Error, B.

*Chew* v. *Peale*, is the next case. This was to revive after judgment, or, in other words, to have execution. 12 S. & M. 701. The mere power to sue or collect debts does not by common law authorize a revival. Executors could always sue; assignee of bankrupt could sue by statute. Brown on Actions at Law, 161; 4 B. & C. 920.

In actions *ex contractu*, the verdict and judgment must be alike against all the defendants on a note. 1 Dana, 128.

But even if it could be revived, this will have to be reversed. There is no notice given to revive the *scire facias*. 12 S. & M. 701.

*Thrusher & Sellers*, and *Sanders*, on the same side.

*W. S. Wilson*, for defendant in error.

Suppose the makers make a successful defence that reduces the amount as to them, which did not apply to the indorser, is it not obvious that there must have been on one verdict for the smaller sum, one judgment against the makers; and on the verdict for the larger sum, another judgment against the indorsers?

The third section of the act of 1837, Hutch. Dig. 852, provides for such a case: " That the jury may render a verdict against part of the defendants and in favor of the others, &c.; and the court shall enter up the proper judgment against the defendants; which judgments and verdicts shall not be reversed, annulled, or set aside, for want of form."

·If the aggregate of the two recoveries in this case does exceed the amount of principal and interest, at the time due on the note sued on, the objection is no more fatal than would have been an objection under the old practice, that the holder of a note was seeking to recover several judgments against the maker, and the various parties thereto. It is familiar to all, that on a note for $1,000, a holder might have recovered judgments to the amount of $10,000, the only restriction on him having been, that he could collect his money from one of the parties only. So here, Robertson has recovered judgments amounting, in the aggregate, to more than was due him. He cannot collect them both. If he gets the $1,950 from the makers of the note, he must give credit for the amount on the larger judgment against the indorser. Again, it is insisted, that no revival of the suit could have been had in the name of Robertson, our statute only providing, it is said, for a revival by an executor or administrator. If this were true, the result would not follow because the statute providing against abatements of suits, would receive a liberal construction, for the furtherance and advancement of the remedy.

But the statute is not confined in its terms to revivals by executors and administrators. In Hutchinson's Digest, p. 842, in the last clause of the last paragraph are the following words: "And if on the death of any plaintiff, in actions which survive, before verdict, the heir, legatee, devisee, executor, *administrator*, or other legal representative, shall not appear voluntarily, &c., and become a party to such action," &c.; thus showing an intention, that pending suits should be revived by any "legal representative," no matter by what name called.

But in the case of this very bank and this trustee, a revival was had in this court in *Comm'l Bank* v. *Chambers,* 8 S. & M. 9. So, in a like case, in *Nevitt* v. *Bk. Port Gibson,* 6 Ib. 513. See also *Chew* v. *Peale,* 12 S. & M. 700.

If repeated decisions can settle any thing, we had supposed this question had been put at rest.

*Eustis,* on the same side.

At the April term, 1847, the suit was revived upon motion

Torry et al. *v.* Robertson.

by Robertson; in his name, as trustee of the Commercial Bank, under the act of 1843. The record shows no objection to this order, made during that term. At the following October term, a *scire facias* having issued (returnable to that term) to bring in the representatives of Torry, a deceased defendant, a motion was made not only to quash this *scire facias*, but also to set aside the order of revival of the suit in the name of Robinson, which order had been made at the previous term. The counsel for plaintiffs in error contend that this motion remains on the record undisposed of. Our answer to this is, that so much of the motion as attempted to reach the order of revival made at the previous term, was not within the jurisdiction of the circuit court, and might, with propriety, be disregarded by the court; and that the remainder of the motion, namely, to quash the *scire facias*, was, in fact, acted on at the subsequent term, April, 1848; the record showing that, on the 12th of that month, an order of revival against the executors of Torry was entered. It is true, that the record does not contain the recital that the motion was argued by counsel; but such recital is mere form, the absence of which was cured by the subsequent verdict.

As to the amount of the verdict being larger against the indorser than against the maker, there is nothing in the record to raise the least presumption of injustice in this. The consideration of an indorsement of a note may remain unimpeached, although there may have been partial failure of consideration between payee and maker.

If this case is argued for plaintiff in error on the assumption that Chambliss is an accommodation indorser, we reply, that pretence is utterly unfounded in fact, and refer to the record to sustain this position.

Mr. Justice FISHER delivered the opinion of the court.

This was an action of assumpsit, commenced at the May term, 1843, of the circuit court of Claiborne county, by the Commercial Bank of Natchez, against a portion of the present plaintiffs in error and others, as to whom the suit was discontinued.

At the April term, 1847, the defendant in error appeared in

court, suggested a dissolution of the corporation, by virtue of a judgment of forfeiture by the circuit court of Adams county, at the May term, 1845, thereof, made known his appointment as trustee by the said court, on pronouncing judgment of forfeiture, and moved to revive the suit in his name, as trustee, &c.; which motion was granted by the court; and this order presents the only error which we will notice in this opinion.

The counsel for the defendant in error has cited us to the cases of *Nevitt* v. *The Bank of Port Gibson*, 6 S. & M. 521; *The Comm'l Bank of Natchez* v. *Chambers*, 8 Ib. 44; and *Chew* v. *Peale*, 12 Ib. 700; and insists that they are decisive of the question now under consideration. We admit it to be a correct rule, " that whenever the fact is the same, the law should also be the same;" and keeping in view this principle, we will briefly glance at the state of facts before the court, in the several cases cited, and then endeavor to ascertain their true application to the case now under investigation; only remarking, in the language of a former judge of this court, in the case of *Wade* v. *Grimes*, 7 How. 435, " that, however general the expressions used in those cases may be, they are to be confined to the subject matter before the court, and to the facts of the cause under consideration."

The case of Nevitt was an appeal from an interlocutory decree of the chancellor, to this court; pending which, a judgment of forfeiture was rendered in the circuit court of Claiborne county against the Bank of Port Gibson, and trustees appointed under the statute, who appeared in this court, and asked to be made appellees, in lieu of the dissolved corporation; which motion was sustained by the court. On this part of the case, the majority of the court said: " That, by the statute law of this State, the court of chancery and this court is each ,clothed with the power of making rules for the conduct of suits depending in them. In the exercise of this power, the chancery court has directed, that when any party shall die, the proper representatives of the personalty, or realty, as the case may be, may voluntarily come in, and be admitted a party to the suit. This court has adopted the rules of the chancery court for its guidance and government in chancery proceedings. We think the present case is comprehended by the rule."

Torry et al. *v.* Robertson.

It has already been stated that the trustees voluntarily appeared in court, and moved to be made parties to the appeal, in lieu of the bank. Under the rule of the court quoted, it was decided to be competent for them to come into court in this manner, that is, voluntarily, and move to revive the appeal. Nothing is stated in the opinion of the court as to the rule of law which manifestly governed it in sustaining the motion; but the principle is very clearly stated in the authority cited in the opinion of Judge Clayton, and will be found in 1 Rob. Va. R. 522. The court there says, that "proceedings in error have never been subjected to the rules that govern the proceedings in the original suit in respect to abatements and revivors." The learned judge, delivering the opinion of the court in the case last named, states further, that, "until the act of 1806 was passed, an original suit was abated by the death of either party before interlocutory judgment, and could not be continued by or against the representative." "But appeals and writs of error did not abate by the death of either party. The other party, or the representative of the deceased, might, in such case, revive the appeal or writ of error by *scire facias.*" The rule of law thus distinctly appears, upon which Judge Clayton placed the decision in Nevitt's case, which will, on examination, be found to harmonize with the English practice in similar cases, where it is held, that if the plaintiff in error dies after errors assigned, it does not abate the writ. 2 Tidd's Practice, 1163. Our statute having abolished the assignment of errors, the filing of the record in court would be regarded as equivalent to an assignment of errors.

The case of Chambers was a writ of error prosecuted by the Commercial Bank of Natchez, from a judgment of the circuit court of Scott county. Pending this writ, a judgment of forfeiture was pronounced against the bank, and the present defendant in error having been appointed trustee, appeared in court, and moved to have the writ of error revived in his name; which motion was sustained by the court. The principles of law bearing on the point in Nevitt's case, will apply with equal force to that of Chambers, as they were both motions for the same object in this court.

Torry et al. *v.* Robertson.

The case of *Chew* v. *Peale,* was a motion in the circuit court of Yazoo county, to revive a judgment rendered in the name of the bank, whose charter had been adjudged forfeited, and is not seen to have sufficient bearing on the point under consideration, to require farther notice.

We are next cited by counsel to the statute in Hutch. Code, § 47, p. 841, in these words: " When any suit or action shall be depending in any court of this State, and either of the parties shall die before final judgment, the executor or administrator of such deceased party, either plaintiff or defendant, shall have full power (in case the cause of action by law survive) to prosecute or defend such suit or action to final judgment."

To make this statute applicable to the question under consideration, it must be construed to embrace artificial, as well as natural persons. Will it bear such construction? At the time of the passage of the statute, the common law mode of proceeding against a corporation, for a violation of its charter, was in full force; and it was immaterial from what cause the corporation was dissolved; the law upon its civil death had provided for it no representative; the debts due to and from it became extinct, because the law permitting an executor or administrator to qualify on the estate of a deceased natural person, did not embrace an artificial one. When, therefore, the statute says that the executor or administrator shall have power to prosecute or defend an action commenced by or against the deceased to final judgment, we must understand it as embracing only those cases where the law allowed an executor or administrator to qualify. The law only allowed natural persons to have such representatives; such persons were, therefore, only embraced in the statute. If it had been intended to include artificial persons, provision would have been made on their civil death to give them representatives. No such provision was made, and they are, therefore, not within either the language or spirit of the statute.

But it is insisted the case is provided for by another section of the statute, Hutch. Code, 842, in these words: "And if, on the death of any plaintiff in actions which survive, before verdict, the heir, legatee or devisée, executor, administrator, or

Torry et al. *v.* Robertson.

other legal representative of such deceased party shall not appear voluntarily on the return of a *scire facias* executed, and become a party to such action as hereinafter provided, on or before the second term of the court next after the death of such party shall have been suggested on the record, such action shall be discontinued." It is insisted that the words *or other legal representative of such deceased party*, have no appropriate meaning unless applied to a case like the present. We will not undertake on the present occasion to assign them a meaning, but merely to ascertain whether they embrace the case before us. It has already been stated that the legislature, in speaking of the death of a party to a suit, had reference only to natural persons. By ascertaining the person whose death is spoken of, we know the estate to be represented. The words must, therefore, apply to the estate of a deceased natural person; whether there can be any other legal representative of such a person than those named in the law, it is not necessary for us now to decide. We have said, that the law provided no representative for an artificial person, and the words cannot, therefore, be made to apply to a person who could have no representative.

It is, lastly, urged that the trustee, by virtue of the power given in the 8th section of the act of 1843, Hutch. Code, 331, to sue for, and collect all debts due to the bank, has a right to have suits pending at the time of the forfeiture revived in his name, where the bank was a plaintiff; and we are told that the point has received the adjudication of this court. Upon a careful examination of the authorities, we have not been able to find a case in which the question has been made in this court. The case of *Chew* v. *Peale*, was a motion to revive a judgment which had been recovered by the bank in the name of the trustee, and not a suit pending by the bank in the circuit court.

The question did not arise in Nevitt's case, which was a motion to revive an appeal, which was fully sustained, as we have seen by the authorities. The same may be said of the case of Chambers. But it is said that the point was considered as decided before the Chambers case arose in this court; and we are cited to the language of the former chief justice on that occasion, which is this: " Prior to the act of 1846, we decided

Torry et al. *v.* Robertson.

that the trustees appointed under the act of 1843, on the disso-
lution of a corporation, were entitled to have all suits revived in
their names which had been instituted by the corporation, and
were pending at the time of the forfeiture. The act of 1843
authorizes them to sue; and having such right, they of course
had a right to prosecute suits then pending." The chief justice
doubtless refers to the decision of the court in Nevitt's case, as
that is the first in which a question to revive appears to have
been made; that case has already been sufficiently noticed,
and we passed it with only this remark, — that the point
whether the trustee could revive a suit pending in the name of
the bank, at the time of dissolution, does not appear to have
been presented by the record, or noticed by the court. Nor was
such question presented by the record in the Chambers case.
It is, therefore, one of first impression in this court, and we
must determine whether the right exists as contended for under
the statute of 1843, which gives the trustee the power to sue
for, and collect the debts of the dissolved corporation.

At common law an original suit abated by the death of a
natural person. Williams on Executors, 639. The power to sue
and collect debts is given by our statute to executors, adminis-
trators, and collectors of deceased persons. Hutch. Code, 670,
§ 111. But the legislature never for a moment supposed that
the power to sue for and collect debts would authorize suits
commenced by the deceased to be revived and prosecuted to
final judgment by the executor or administrator, and hence
enacted the statute authorizing a revivor in such case. Hutch.
Code, 841, 842. If this power to sue for and collect debts by
executors, &c., authorized a revivor of a suit commenced by the
testator, then the statute on this subject was wholly unneces-
sary. But legislation was desired to be complete on this sub-
ject, and to remedy the evil arising from a defect in the old law,
and hence the special statute as to the revival of suits.

Under the law, an administrator *de bonis non* could sue for
and collect the debts of the deceased; yet it was held by this
court in the case of *Portevant* v. *Pendleton*, 1 Cushman's R.
25, decided November term, 1851, that a suit commenced
against the original administrator who had died, could not be

Torry et al. *v.* Robertson.

revived against the administrator *de bonis non* succeeding in the administration, because by the common law such suit abated, and the legislature had not provided for the case. Here the power to sue and liability to suit, were complete, yet the suit could not be revived against the administrator *de bonis non*, because the law as to abatement in such a case had not been changed by legislation.

Analogous to this question may be cited the case of an assignee in bankruptcy, who had power under the English law to sue for and collect the debts of the bankrupt. Yet this power did not authorize him to revive or continue in his name, suits commenced by the bankrupt. 1 Chitty's Pleading, 23; 4 Bar. & Cress. 920.

This being thought a defect in the English bankrupt law, was provided against by congress in the bankrupt law of 1841, by enacting that all " suits pending, in which the bankrupt was a party, might be prosecuted and defended by the assignee to final conclusion, in the same way, and with the same effect, as they might have been by such bankrupt."

The assignee had been previously clothed with ample power to sue for and collect the debts of the bankrupt, yet it was thought if legislation stopped here, it would be incomplete, and the defect in the previous law not sufficiently provided against; and, therefore, the power to sue and to revive suits pending, was expressly given by the law.

We are, therefore, of opinion that the assignee could not revive suits pending in the name of the corporation at the time of forfeiture, and that the order reviving in this case was erroneous.

Judgment reversed, and cause abated; defendant in error to pay costs of suit.*

---

* A petition for a reargument was filed by the defendant in error in this case, but was refused to be granted by the court.